# UNITED STATES DISTRICT COURT
### for
#### Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 30, 2025

SEAN F. McAVOY, CLERK

| | | | |
|---|---|---|---|
| U.S.A. vs. | Vazquez-Moreno, Misael | Docket No. | 0980 1:24CR02027-SAB-18 |

### Petition for Action on Conditions of Pretrial Release

      COMES NOW Arturo Santana, PRETRIAL SERVICES OFFICER, presenting an official report upon the conduct of defendant, Misael Vazquez-Moreno, who was placed under pretrial release supervision by the Honorable U.S. Magistrate Judge Alexander C. Ekstrom sitting in the court at Yakima, Washington, on the 25th day of April 2024 under the following conditions:

**Standard Condition #1**: Defendant shall not commit any offense in violation of federal, state, or local law. Defendant shall advise the supervising Pretrial Services Officer and defense counsel within 1 business day of any charge, arrest, or contact with law enforcement. Defendant shall not work for the United States government or any federal or state law enforcement agency unless Defendant first notifies the supervising Pretrial Services Officer in the captioned matter.

**Standard Condition #5**: Defendant shall not possess a firearm, destructive device, or any dangerous weapons.

**Standard Condition #8**: Defendant shall refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner in conformance with Federal Law. Defendant may not use or possess marijuana, regardless of whether Defendant has been authorized medical marijuana under state law.

**Special Condition #7**: Curfew: Defendant shall be restricted to his residence every day as directed by the Unites States Probation/Pretrial Services Officer.

      RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:

On May 2, 2024, the conditions of pretrial release supervision were reviewed with Mr. Vazquez-Moreno. He acknowledged an understanding of his conditions.

**Violation #1**: Misael Vasquez-Moreno is alleged to be in violation of his pretrial release conditions by committing the crime of driving under the influence and operating a motor vehicle on or about May 28, 2025.

On May 28, 2025, per Grandview Police Department incident report number 25V2524, at approximately 2100 hours, Officer Glasenapp was westbound in approximately the 700-800 block of West 3rd Street when they heard a vehicle accelerating rapidly and observed a white passenger car at a high rate of speed eastbound on West 3rd Street from Euclid Road in the city limits of Grandview, Washington. The officer visually estimated the violator's speed to be at least double the 25 mile-per-hour (mph) speed limit in the residential zone. It should also be noted there are cross streets every block in the avenues. The violator appeared to notice Officer Glasenapp and broke hard, rapidly decreasing their speed. The officer executed a u-turn at Avenue H and observed the violator accelerate rapidly again and turn southbound on Avenue G. The violator easily exceeded the 25 mph speed limit. The officer activated his emergency lights and accelerated rapidly as he believed the driver was going to attempt to flee.

The driver, later identified as Misael Vazquez Moreno, pulled to the right as the officer was southbound on Avenue G and observed the vehicle's reverse lights come on. Mr. Vazquez-Moreno accelerated unusually fast in reserve and parked in front of a vehicle in the 300 block of Avenue G. The officer exited his patrol vehicle believing Mr. Vazquez-Moreno was going to attempt to run on foot. Mr. Vazquez-Moreno exited the driver's seat and the officer directed him back into the vehicle. Mr. Vazquez-Moreno did not comply, instead began walking away from the driver's door and toward the back of the vehicle.

Mr. Vazquez-Moreno made a statement about already being home. As the officer approached the vehicle, the officer could smell the odor of marijuana at approximately 6-8 feet away from the vehicle.

The officer noted the strong odor of alcohol coming from Mr. Vazquez-Moreno as he spoke and noted his speech was slurred. Officer Glasenapp has been a law enforcement officer for approximately 17.5 years, has interacted hundreds of times with intoxicated persons, and has been involved in conservatively more than 300 driving under the influence (DUI) arrests. Based on the officer's experience as a law enforcement officer, he believed Mr. Vazquez-Moreno was intoxicated, and his driving behavior was affected by his alcohol and/or drug use. The officer grabbed a hold of Mr. Vazquez-Moreno to detain him into handcuffs as the officer believed he was a flight risk. Mr. Vazquez-Moreno began pulling away. The officer noted the overwhelming odor of alcohol coming from him as he spoke. The officer advised Mr. Vazquez-Moreno he was under arrest for reckless driving and DUI.

Mr. Vazquez-Moreno kept twisting and not complying while the officer was trying to search him incident to arrest. The officer located a small plastic bag in the coin pocket of his pants. Mr. Vazquez-Moreno immediately stated that was not his. The officer noted the bindle appeared empty. Mr. Vazquez-Moreno repeatedly stated this was an illegal arrest and he was already home. A female began telling Mr. Vazquez-Moreno to knock it off and kept saying please. Mr. Vazquez-Moreno turned toward her, and the officer applied pressure to his wrist via a reverse gooseneck. Mr. Vazquez-Moreno went to his knees. The officer asked Mr. Vazquez-Moreno if he wanted to stay on his knees or if he wanted to stand up like an adult. Mr. Vazquez-Moreno stated he would stand up. The officer told him to stand up then and to face his vehicle and not move. Mr. Vazquez-Moreno went to his knees again. Mr. Vazquez-Moreno advised it was because the officer kept pulling him. It should be noted, the officer was holding Mr. Vazquez-Moreno's right hand in a reverse gooseneck and was applying very little pressure, holding him in an escort position so he could be searched; however, Mr. Vazquez-Moreno kept moving and twisted away. The officer again advised Mr. Vazquez-Moreno to face the vehicle and to not move.

In Mr. Vazquez-Moreno's left front pocket were two cell phones and a large amount of cash. When the officer pulled the phones out, Mr. Vazquez-Moreno advised this was an illegal search because the officer was going through his phones. The officer did not open or go through Mr. Vazquez-Moreno's phones and handed them off to Officer Flores, who was standing nearby. Mr. Vazquez-Moreno again began twisting toward the officer. The officer redirected him to face the vehicle. The officer removed the cash from his front left pants pocket and he noted $100 bills as he was passing the cash off to Officer Flores. Mr. Vazquez-Moreno again stated this was an illegal search and asked if the officer had a search warrant.

Mr. Vazquez-Moreno repeatedly spoke and made statements, without questioning from law enforcement. Mr. Vazquez-Moreno stated the officer had "pulled a bitch" on him for no reason. Flipping a bitch is a common phrase used for making a u-turn. Mr. Vazquez-Moreno stated he had come home and then questioned, "I'm going to get arrested for parking?"

While having Mr. Vazquez-Moreno sit in the officer's patrol vehicle, Mr. Vazquez-Moreno stated they could not just arrest him like that. Officer Flores advised him they would read him his rights now. Mr. Vazquez-Moreno stated he did not do anything illegal and the officer had come and "rolled up on him while parking." Mr. Vazquez-Moreno stated he was "on a federal charge right now" and had an ankle monitor.

The officer read Mr. Vazquez-Moreno his Miranda warnings and when asked if he understood his rights, he stated, "Yes I do," and stated to let him call his lawyer. The female standing nearby, who the officer later found out was Mr. Vazquez-Moreno's sister, asked where he was going to be taken. After answering her questions, the officer walked to the vehicle, a Mercedes, with Washington license plate # BZG3792. While standing on the public sidewalk and outside the Mercedes on the passenger side, the officer could see a pistol on the front passenger's floorboard. Mr. Vazquez-Moreno was the sole occupant of the vehicle.

After Mr. Vazquez-Moreno had stated he was on federal charges, the officer recalled the Mercedes as being involved in an Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) case that he had assisted on, and believed Mr. Vazquez-Moreno was referring to that case when he advised he was on federal charges.

The next rotational tow was requested and Officer Flores and Officer Fernandez conducted an evidence impound of the Mercedes. Officer Flores later advised the officer that the vehicle had been secured and sealed with evidence tape. The officer returned to his vehicle and Mr. Vazquez-Moreno had said he wanted to talk to him. The officer looked at the top of his body-worn camera and observed the light was flashing green, indicating it was not recording. The officer activated his body camera. He had believed he activated his camera when he exited his patrol vehicle on initial contact; however he exited quickly because he had believed Mr. Vazquez-Moreno was going to run on foot, and he unknowingly did not activate his body-worn camera. Officer Flores had shown up within approximately 1.5-2 minutes after initial contact and his body-worn camera captured much of the interaction.

The officer transported Mr. Vazquez-Moreno to the police department. During transport, Mr. Vazquez-Moreno claimed he had not been driving and it was his friend driving. The officer had observed Mr. Vazquez-Moreno exiting the driver's seat after pulling to the right and reversing to park. Mr. Vazquez-Moreno was the only person in the vehicle and no other persons exited. It should also be noted that Mr. Vazquez-Moreno was driving rapidly southbound on Avenue G and pulled to the right, braking hard causing the vehicle to decelerate quickly before putting it into reverse. At no point did the officer see any other persons exit the vehicle.

When they arrived at the police department, Mr. Vazquez-Moreno made a statement about the money they had taken from him. He stated that the money was from managing a car detailing business. The officer asked him if he had a business license for that. Mr. Vazquez-Moreno stated he was barely going to open it. The officer asked him if he carried around $2,000 from a business that he did not have a business license for. He made a comment about having 10 people. The officer asked if he had 10 employees. Mr. Vazquez-Moreno then stated probably like five or six. He then advised he charges $40 and everyone else charges like "180 bucks." The officer placed Mr. Vazquez-Moreno into Cell 1 after searching the cell for contraband and removing trash/non rolled toilet paper from the cell. The officer asked Officer Lopez to allow Mr. Vazquez-Moreno to call his lawyer if he wanted. To preserve evidence, Mr. Vazquez-Moreno's two phones were placed into airplane mode.

The officer called and spoke to Special Agent Standiford with the ATF. The special agent advised that Mr. Vazquez-Moreno was under indictment for gun related and drug related crimes as well as money laundering. She advised because he was under indictment, he was not eligible to possess a firearm. The officer authored a search warrant to obtain a sample of Mr. Vazquez-Moreno's blood. Judge Hintze found probable cause for the search warrant and authorized the officer to obtain a sample of Mr. Vazquez-Moreno's blood and further authorizing him to submit the blood sample to the Washington State Toxicology Laboratory for analysis.

Mr. Vazquez-Moreno was handcuffed and the officer escorted Mr. Vazquez-Moreno from Cell 1 to his patrol car. Mr. Vazquez-Moreno advised he needed to use the restroom. The officer returned Mr. Vazquez-Moreno to Cell 1 and removed the handcuffs. After he used the restroom, the officer handcuffed Mr. Vazquez-Moreno again and he escorted him back to his patrol vehicle. The officer read Mr. Vazquez-Moreno the search warrant. The officer transported Mr. Vazquez-Moreno to Astria Sunnyside Hospital for the blood draw. During transport, Special Agent Standiford called the officer again and advised that one of Mr. Vazquez-Moreno's indictments was for a federal charge under 18 U.S.C. § 922(g)(5), for being an alien in possession of a firearm. Special Agent Standiford advised that Mr. Vazquez-Moreno is not in the United States lawfully. The officer provided the phlebotomist with Astria Sunnyside Hospital, with two grey top vials. The vials had been sealed in a blood draw kit. The draw site was Mr. Vazquez-Moreno's right arm and the draw site was swabbed with a Povidone-Iodine swabstick. The officer asked the phlebotomist to place the swabstick back in the packaging so it could be retained as evidence. She drew two syringes of Mr. Vazquez-Moreno's blood. The syringes were each stored in their own individually sealed packages. The draw began at approximately 0045 hours. Once the draw was complete, the blood was transferred to the grey top vials that had been provided by the officer. Officer Lopez then transported Mr. Vazquez-Moreno to the Sunnyside Police Department jail.

**Violation #2**: Misael Vasquez-Moreno is alleged to be in violation of his pretrial release conditions by committing the crime of reckless driving on or about May 28, 2025.

Please refer to violation number 1 above.

**Violation #3**: Misael Vasquez-Moreno is alleged to be in violation of his pretrial release conditions by committing the crime of unlawful possession of a firearm on or about May 28, 2025.

Please refer to violation number 1 above.

**Violation #4**: Misael Vasquez-Moreno is alleged to be in violation of his pretrial release conditions by committing the crime of alien in possession of a firearm on or about May 28, 2025.

Please refer to violation number 1 above.

**Violation #5**: Misael Vasquez-Moreno is alleged to be in violation of his pretrial release conditions by committing the crime of obstructing a law enforcement officer on or about May 28, 2025.

Please refer to violation number 1 above.

**Violation #6**: Misael Vasquez-Moreno is alleged to be in violation of his pretrial release conditions by possessing a firearm on or about May 28, 2025.

Please refer to violation number 1 above.

**Violation #7**: Misael Vasquez-Moreno is alleged of being in violation of his pretrial release conditions by consuming marijuana on or about May 28, 2025.

Please refer to violation number 1 above.

**Violation #8**: Misael Vasquez-Moreno is alleged of being in violation of his pretrial release conditions by failing to abide by his location monitoring curfew schedule, by failing to enter his primary zone, home, before 9 p.m..

On April 25, 2024, a curfew schedule was approved by this officer requiring Mr. Vazquez-Moreno to be home from 9 p.m. to 8 a.m. daily.

On May 28, 2025, at approximately 8:51 p.m., this officer received a text message from Mr. Vazquez-Moreno stating, "Santana, I was playing league could of go back and finish?" This officer did not respond to Mr. Vazquez-Moreno as he has been previously warned not to contact this officer after business hours making last-minute schedule requests.

On May 28, 2025, at 9 p.m., Mr. Vazquez-Moreno did not enter his location monitoring primary zone, which was his residence. At approximately 9:02 p.m., Mr. Vazquez-Moreno was detained by Grandview Police as aforementioned in violation number 1, prior to him entering his residence. It should be noted that Mr. Vazquez-Moreno was at either Javi's Chicken and Churros restaurant/bar and/or The Blue Moon Tavern, which are neighboring businesses in Sunnyside, Washington, from approximately 4:01 p.m. until he left at approximately 8:51 p.m.

PRAYING THAT THE COURT WILL ORDER A WARRANT

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on: May 30, 2025

by   s/Arturo Santana

Arturo Santana
U.S. Pretrial Services Officer

THE COURT ORDERS

[ ] No Action
[X] The Issuance of a Warrant
[ ] The Issuance of a Summons
[ ] The incorporation of the violation(s) contained in this petition with the other violations pending before the Court.
[ ] Defendant to appear before the Judge assigned to the case.
[X] Defendant to appear before the Magistrate Judge.
[ ] Other

Signature of Judicial Officer

5/30/2025
Date